# United States District Court

for the
Western District of New York

United States of America

v.

**KYLE BRADLEY DAVIS**

*Defendant*

Case No. 20-MJ- 4169

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about September 8, 2020, in the County of Monroe, in the Western District of New York, the defendant, KYLE BRADLEY DAVIS, did knowingly and intentionally commit and attempt to commit an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder which obstructed, delayed, and adversely affected commerce and the movement of any article or commodity in commerce, in violation of Title 18, United State Code, Section 231(a)(3).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

STUART SHUMAN
Task Force Officer, Federal Bureau of Investigation
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:

Date: September 10, 2020

*Judge's signature*

MARIAN W. PAYSON
United States Magistrate Judge
*Printed name and title*

City and State: Rochester, New York

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

State of New York )
County of Monroe ) SS:
City of Rochester )

**Case No.**
20-MJ-4169

I, **STUART SHUMAN**, being duly sworn, depose and state that:

## INTRODUCTION

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), and I am assigned to the Rochester, New York Resident Agency. I have been assigned as a Task Force Officer with the FBI since July of 2016. I have been employed by the Rochester Police Department (RPD) since November of 1995, and assigned as an Investigator since May of 2005. As part of my professional experience, I have participated in state and federal investigations involving bank robbery, Hobbs Act robbery, fugitives, and illegal drug trafficking. I further state that I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant against KYLE BRADLEY DAVIS (hereinafter, "DAVIS") for civil disorder, in violation of 18 U.S.C. § 231(a)(3). As set forth below, there is probable cause to believe that DAVIS pointed a green laser at the person and in the eyes of three uniformed RPD officers and four uniformed New York State Police (NYSP) Troopers (hereinafter referred to as "the victim officers") multiple times for the intended purpose of obstructing, impeding, or interfering in a

violent manner with law enforcement officers; that he did so knowingly; and that he did so during a civil disorder that obstructed, delayed and adversely affected interstate commerce.

3. The assertions made herein are based solely upon my personal knowledge or upon information I have received from other law enforcement agents who are involved in this investigation. Further, I have had discussions with officers involved in this investigation who have confirmed the accuracy of the information contained within this affidavit. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe the defendant committed the above-mentioned offense.

## APPLICABLE LAW

4. Section 231(a)(3) provides, in pertinent part, that "whoever commits or attempts to commit any act to obstruct, impede, or interfere with any . . . law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce . . . shall be fined under this title or imprisoned not more than five years or both." "The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). "The term 'law enforcement officer' means any officer or employee of . . . any State [or] any political subdivision of a State . . . while engaged in the enforcement or prosecution of any of the criminal laws of . . . a State [or] any political subdivision of a State." 18 U.S.C. § 232(7).

2

## PROBABLE CAUSE

5.      On or about September 2, 2020, it was publicly revealed that Daniel Prude died on March 30, 2020, one week after an encounter with RPD police officers. In the wake of that public disclosure, large groups of people have engaged in several consecutive nights of protests in the City of Rochester. At various times during the protests, some protesters engaged in conduct that resulted in property damage and physical injury to RPD police officers. For example, on September 4, 2020, a group of protesters damaged property and turned over tables at two restaurants in the City of Rochester, causing numerous patrons to leave. On September 5, 2020, some protesters hurled rocks, bottles, lit fireworks, and other objects at police officers, and pointed lasers at police officers. On September 6, 2020, some protesters hurled bottles and pointed lasers at police officers. In connection with the protests, law enforcement has shut down Exit 14 on Interstate 490 in the City of Rochester, which is the exit for Broad Street and Plymouth Avenue near RPD headquarters, for several hours at a time and the State Street exit on the Inner Loop in the City of Rochester for periods of time.

6.      During the evening of September 8, 2020, a group of approximately 400 protesters gathered near RPD headquarters, which is located at 185 Exchange Boulevard in the City of Rochester. Once the group arrived, they gathered in front of RPD headquarters, where they blocked all lanes of traffic on Exchange Boulevard between Court Street and the Interstate 490 overpass. RPD officers and NYSP Troopers staffed metal barricades, which were positioned in the driveway area of RPD Headquarters.[1] At approximately 10:00 p.m., surveillance cameras captured DAVIS pointing green lasers at the victim officers, who were

---

[1] The barricades were not positioned in the street on Exchange Boulevard. As a result, they did not obstruct automobile or pedestrian traffic on Exchange Boulevard.

3

positioned in the area of RPD Headquarters to control the crowd and prevent a breach of the barricades. Each of the victim officers was wearing markings on their clothing that clearly identified them as police officers. The victim officers experienced a temporary loss of sight as a result of being hit with the laser, which impeded and interfered with their ability to carry out their assigned duties. Surveillance cameras showed DAVIS place the laser in his pocket and walk down Exchange Boulevard toward South Plymouth Avenue.

7. Police officers posted in the area of South Fitzhugh Street and South Plymouth Avenue observed an individual – later identified as DAVIS – who matched the description of the individual who had been pointing lasers at the victim officers. DAVIS was dressed in all black clothing, wearing glasses and holding a sign. The police officers began to walk toward DAVIS in order to detain him. A police officer told DAVIS to stop. DAVIS yelled loudly that he did not trust the police officer one bit and then ran south on South Fitzhugh Street. An RPD Officer (hereinafter referred to as "the arresting officer") gave chase and tackled DAVIS in area of 218 South Fitzhugh Street. DAVIS pushed himself up, stood up and attempted to pull away. DAVIS was then taken into custody. After the arrest, the police officers recovered a black laser from DAVIS's front sweatshirt pocket. A police officer pressed a button on the black laser, which then emitted a green laser light. The black laser was marked with a warning that, in sum and substance, cautioned the user not to point the laser at anyone's eyes.

8. As a result of the arrest, the arresting officer sustained a fractured orbital bone and a laceration under his left eye. The arresting officer continues to suffer from blurry vision in his left eye. The arresting officer was taken to the hospital where he received medical treatment, including seven stitches.

## CONCLUSION

9.      Based on the above information, there is probable cause to believe that, on September 8, 2020, in the Western District of New York, KYLE BRADLEY DAVIS knowingly and intentionally obstructed, impeded, and interfered – and attempted to obstruct, impede, and interfere – with law enforcement officers who were engaged in the lawful performance of their official duties when DAVIS pointed a laser into the eyes of the victim officers while participating in the blocking of traffic on public streets; and that these actions occurred during a civil disorder that obstructed, delayed and adversely affected interstate commerce, in violation of 18 U.S.C. § 231(a)(3).

STUART SHUMAN
Task Force Officer
Federal Bureau of Investigation

Affidavit and Criminal Complaint submitted electronically by e-mail in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d):

HONORABLE MARIAN W. PAYSON
United States Magistrate Judge
Western District of New York